CAROL JANICE FREEMAN and JOHN CHARLES FREEMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Freeman v. Commissioner
Docket No. 2230-78.
United States Tax Court
T.C. Memo 1979-288; 1979 Tax Ct. Memo LEXIS 238; 38 T.C.M. (CCH) 1122; T.C.M. (RIA) 79288; July 31, 1979, Filed *238 Carol Janice Freeman and John Charles Freeman, pro se. John W. Dierker, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent has determined a deficiency of $259 in petitioners' Federal income tax for 1975. After a certain concession, the issue is whether petitioners are entitled to a deduction for child care expenses under section 214, I.R.C. 1954. [1]
This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners John Charles Freeman and Carol Janice Freeman were legally married and maintained a household during the entire year of 1975. When they filed their petition, they resided in Lancaster, Texas. Petitioners filed a joint Federal income tax return for 1975 with the District Director of Internal Revenue at Austin, Texas. In 1975, Carol Freeman was gainfully employed as an office manager by Electromotive Corporation and Thornton Electric Company in *239 Dallas, Texas. She worked 40 hours per week. John Freeman was incarcerated at Huntsville, Texas State Prison for the entire year of 1975, where he was serving a term for armed robbery. During the year, he worked 56 hours per week in the prison guards' mess hall. As compensation for his work in the mess hall, petitioner's sentence was reduced an extra ten days for each 30 days worked. During each 30 days, petitioner also was granted a 20-day "good time" reduction in his sentence. It was also necessary for him to work to qualify for this "good time" reduction. Petitioners have a son, Shawn Todd Freeman, for whom they were entitled to a personal exemption in 1975. Shawn was of pre-school age in 1975. No one was at the Freeman household during the day in 1975 to care for Shawn. It was therefore necessary for petitioners to place Shawn in a day-care center. Petitioners paid $1,034.50 to The Cliff Temple Baptist Church for such child care. No payments were made to individuals related to petitioners, and petitioners' gross income in 1975 did not exceed $18,000. Since his early release from prison, petitioner-husband has been employed continuously in his trade as an electrical *240 repairman with Porch Electric and Thornton Electric Companies in Dallas, Texas. The issue is whether petitioners are entitled to a deduction for child care expenses under section 214. Respondent contends that they are not allowed any deduction only because petitioner-husband was not gainfully employed at all during 1975. It is agreed that if petitioner-husband was gainfully employed, petitioners are entitled to a deduction for $1,034.50. Prior to its repeal in 1976, section 214 allowed deductions for certain "employment-related expenses" paid by the taxpayer during the taxable year. Basically, those expenses are child care expenditures paid so the taxpayer can be gainfully employed. In order to obtain the deduction, section 214 requires, among other things, that both the husband and wife of a household be "gainfully employed." Specifically, section 214(e) (2) provides: SEC. 214(e). Special Rules. -- For purposes of this section -- * * *
(2) Gainful employment requirement. -- If the taxpayer is married for any period during the taxable year, there shall be taken into account employment-related expenses incurred during any month of such period only if -- (A) both *241 spouses are gainfully employed on a substantially full-time basis, or (B) the spouse is a qualifying individual described in subsection (b)(1)(C). Respondent argues that petitioner-husband was not "gainfully employed" within the meaning of section 214(e) (2) (A) because he did not receive any monetary compensation for the services he rendered while in prison. In this regard, respondent relies on Lovelace v. Commissioner,63 T.C. 98 (1974), Garber v. Commissioner,T.C. Memo. 1977-44, and West v. Commissioner,T.C. Memo. 1977-74. His reliance, however, is misplaced. In Lovelace v. Commissioner,supra, one of the taxpayers was a husband who had been incarcerated for embezzlement. His wife was employed full-time and had to pay for the care of their three minor children while she worked. The only issue before the Court was whether the husband qualified as a spouse described in section 214(e) (2) (B). Section 214(e) (2) (B) provides that if a spouse is not gainfully employed on a full-time basis, the taxpayer may still deduct employment-related expenses to the extent that the unemployed spouse is physically *242 or mentally incapable of caring for himself. [2] We held that the husband did not qualify under subsection (e) (2) (B) merely because he was incarcerated. We instead held that he qualified under subsection (e) (2) (B) only while he stated in prison hospitals to receive treatment for high blood pressure and a blood sugar disorder. Nothing in that opinion suggests and we never considered whether the taxpayer-husband could ever qualify under subsectio (e) (2) (A) while incarcerated in prison. Moreover, nowhere in our findings of fact is there any indication of what work, if any, the taxpayer-husband did while in prison in the year at issue. Considering his apparent poor health, it is very likely that he did nothing other than rest and recuperate from his illnesses. In any event, we never considered in Lovelace whether a taxpayer can be gainfully employed under any circumstances while in prison. *243 In Garber v. Commissioner,supra, and west v. Commissioner,supra, we held that full-time students who received educational benefits from the Veterans Administration were not "gainfully employed" within the meaning of section 214(e) (2) (A). Although the benefits were paid because of the students' prior association with the Armed Forces, we felt that they were more in the nature of scholarships than compensation for prior services. Therefore, the taxpayers were not employed at all, but simply were students. Those cases are equally inapposite here. Petitioner-husband in this case was not a student during the year at issue; he worked in the prison guards' mess hall -- an endeavor entirely different from the pursuit of education. Thus we are faced with a case of first and, considering the repeal of section 214, probably last impression. On the requirement of gainful employment, section 1.214A-1(c) (1) (i), Income Tax Regs., provides in pertinent part: (c) Employment-related expenses -- (1) Gainful employment -- (i) In general. Empenses are considered to be employment-related expenses only if they are incurred to enable the taxpayer to be *244 gainfully employed and are paid for household services or for the care of one or more qualifying individuals. The expenses must be incurred while the taxpayer is gainfully employed or is in active search of gainful employment. The employment may consist of service either within or without the home of the taxpayer and may include self-employment. Unpaid volunteer work or work for a nominal salary does not constitute qualifying employment. * * *
Clearly, if a taxpayer is working for nothing or for a nominal salary, he is not gainfully employed for purposes of section 214. This does not mean, however, that compensation for work must be in the form of cash. Certainly a taxpayer who receives property as compensation for his full-time services is gainfully employed within the meaning of the statute. This is so even though the property received is intangible, such as a valuable contract right or a right to future payments. It is the fact, not the form of compensation that determines whether employment is gainful. Petitioners argue that petitioner-husband received compensation for his services that was far more valuable than cash, viz. a reduction in his prison term, that *245 the compensation was later used to generate income during his early release, and that this constitutes gainful employment. We agree. Nothing in the record suggests that petitioner-husband was required by the terms of his sentence to work while in prison. As best we can determine, he worked primarily to obtain a reduction in the length of his incarceration. This was translated later into monetary compensation when he was released from prison before the expiration of his sentence. The mere fact that petitioner-husband was incarcerated during his employment should not prevent the deduction sought here. Employment is nonetheless gainful merely because the services are rendered in prison. So long as the taxpayer is working for valuable compensation, he is gainfully employed. And we consider nothing more valuable than a person's freedom. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as in effect for the taxable year at issue.↩
2. Subsection (e) (2) (B) refers to subsection (b) (1) (C), which provides: SEC. 214(b). Definitions, Etc. -- For purposes of this section -- (1) Qualifying individual. The term "qualifying individual" means -- * * *
(C) the spouse of the taxpayer, if he is physically or mentally incapable of caring for himself.↩